## David A. Holman et al. *v.* William M. Murdock.

1. High court: bills of exception: exceptions to the introduction of evidence may be taken in a bill of exceptions taken on a motion for a new trial.—If the bill of exceptions taken to the decision of the Circuit Court on a motion for a new trial, recite that exceptions were taken, at the time, to the rulings of the court upon the admission of evidence, it is sufficient to authorize this court to review the propriety of the rulings thus excepted to.

2. Evidence: rule in relation to admission of declarations in favor of declarant.—The declarations of a party may be received in evidence in his own favor, in cases of extreme necessity arising from the nature of the inquiry which renders it exceedingly improbable, from the confined nature of the transaction, or the generality of the interest which is equally likely to affect other witnesses, that any better evidence exists; but this necessity must be general in its character, embracing a large and definite class of cases, and it must arise in the usual and natural course of human affairs, and must not be the result of an accidental failure of evidence in a particular and isolated case. See 1 Stark. Ev. 132.

3. Same: res gestæ, what constitutes a part of.—Where the declarations of a party are sought to be introduced in evidence as a part of the *res gestæ*, it must appear that they were made at the time the act was done, which they are supposed to characterize, and in connection with it; and they must be well calculated to unfold the nature and quality of the act they are intended to explain, and must so harmonize therewith as obviously to constitute only one transaction. See 1 Greenl. Ev. § 108; *Enos* v. *Tuttle*, 3 Conn. R. 250.

4. Same: case in judgment.—The act of importing a slave into the State is a single transaction, confined to a single point of time; and moreover, the importer, by procuring the certificate of character required by the statute, has it in his power to avoid the necessity of a reliance upon his own declarations as evidence of his intention in making the importation; and hence, his declarations, made on the eve of his departure from the State to purchase slaves, and after his return with them, and whilst they were in his possession, that they were for his own use, and not for sale, are inadmissible in evidence in his favor. Handy, J., dissented.

Holman et al. *v.* Murdock.

5. SAME: OPINION OF THE COMMUNITY IN RELATION TO A POINT OF LAW, NO EVIDENCE OF THE OPINION OF A PARTICULAR MEMBER OF IT.—The fact that members of the bar, and the inhabitants of the county, in which a person resides who has imported slaves into the State, believed at the time of the importation that it was not illegal to import uncertificated slaves for sale, is not a circumstance from which the inference could be legally drawn, that the importer entertained the same opinion, and is not, therefore, competent evidence to go to the jury in support of the truth and sincerity of declarations made by the importer at the time of importation, that they were for his own use, and not for sale.

6. HIGH COURT: JUDGMENT AGAINST MAKER AND INDORSER MAY BE AFFIRMED AS TO ONE, AND REVERSED AS TO THE OTHER.—Upon a writ of error prosecuted from a judgment rendered in a joint action against the maker and indorser of a note or bill, this court will determine the propriety of the verdict as it respects each defendant separately, and, if the justice of the case require it, will affirm the judgment as to one, and reverse it as to the other.

IN error from the Circuit Court of Carroll county.   Hon. E. G. Henry, judge.

Wm. M. Murdock, on the 27th of March, 1856, brought this action against D. A. Holman and John W. Mallory, upon a bill single, made by Holman, for $1001, due on the 1st of that month, and payable to Mallory, or order, and indorsed by him to the plaintiff, on the 22d of the same month.

Holman, in his pleas, resisted the collection of the bill upon the ground that it was given for the purchase-money of a slave introduced into the State, for sale as merchandise, in contravention of the provisions of the Act of 1822.   Hutch. Dig. 513.   Mallory pleaded the general issue, and the cause was submitted to a jury, who found a verdict for the plaintiff, against both defendants, for the amount of the bill and interest.

Holman then moved for a new trial: 1st. Because the court erred in admitting illegal evidence to go to the jury ; and 2d. For error in the instructions.   This motion was overruled, and the defendant, Holman, excepted, and tendered his bill of exceptions.

On the trial, the plaintiff read in evidence the bill single sued on, and the indorsement of Mallory, and closed his case.

Holman then proved that Mallory (who had been for several years previous thereto, engaged in trading in slaves), in the fall of

1855, sold to him a slave Ellen, who was over fifteen years of age, and had been purchased by Mallory, in Virginia, and introduced into this State with "a drove of negroes" purchased at the same time, in the spring preceding; and that the bill single sued on was given for the price of said slave.

He also proved, by one witness, that Mallory, in the spring of 1853, gave as a reason to the witness for not offering to sell the slaves included in the drove, that the market was dull, and that it would be better in the fall, and that the yellow fever was then all over the lower country. This witness, on cross-examination, admitted that he had purchased a slave from Mallory, out of the same "drove," and that he was resisting the collection of the purchase-money upon the ground that the slave had been introduced into the State in violation of law.

The plaintiff then proved, by several witnesses, that just before Mallory started to Virginia, in the fall of 1854, to purchase negroes, he was endeavoring to purchase land in the county, with the view of settling a plantation, and that he was then paying his addresses to a young lady whom he expected to marry. He also proved, by a number of witnesses, that before and just on the eve of his departure for Virginia, in the fall of 1854, to purchase negroes, that they had heard Mallory declare he expected to be married soon; that he was going to purchase negroes to settle on a plantation in Carroll county; and that after his return, and whilst in possession of Ellen and the other slaves, he declared that he had purchased them for his own use; that these last declarations were made to planters who applied to him to purchase, and that he refused to sell, for the above reasons. To the introduction of this evidence, the defendant, Holman, objected, and his objections being overruled, he excepted.

The plaintiff then proved, by several members of the bar, residing in Holmes, Carroll, and Yallabusha counties, that they were not aware that the Act of 1822, in relation to the introduction of slaves, was in force, until the publication of the decision of the High Court, in the case of *Deans* v. *McLendon*, 1 George, 343, in the year 1856, and that previous to that time it was generally considered by the bar and people in that section of the country, that it was not illegal to introduce slaves for sale without certificates of character.

At the time plaintiff's counsel offered to introduce this testimony, he stated that he did not do so for the purpose of excusing Mallory from the consequence of an illegal act, but merely as a circumstance in favor of the truth and *bona fides* of the declarations made by Mallory, and which had been introduced in evidence. The defendant, Holman, objected to the introduction of the evidence, but the court permitted it to go to the jury, for the purpose stated by plaintiff's counsel, but for no other, and the defendant, Holman, excepted.

The court having overruled the defendant Holman's motion for a new trial, he sued out a writ of error therefrom, and had Mallory summoned to join, or sever, as he should elect, in the prosecution of the writ. Mallory elected to join.

*Helm* and *Wright*, for the plaintiff Holman.

This case comes up by writ of error from the Circuit Court of Carroll county. The record is badly made up, pleas and demurrers thrown together, and not coming in their regular order. The bill of exceptions was not embraced in the record as originally returned into this court, but was filed by permission of the court and agreement of counsel on the day the cause was submitted. All that it will be necessary to do, for a full understanding of the points relied upon for a reversal, is to call the attention of the court to a few facts.

The plaintiff in the court below sued David A. Holman as maker, and John W. Mallory as indorser, on a certain note or writing obligatory set out in the record. The defence relied on is made in the plea on page 6 of the record, setting up that the consideration of the note sued on, was the purchase of a negro woman slave, brought into this State as merchandise by said Mallory, and by him sold as such to defendant Holman, contrary to the provisions of the Statute of 1822. Hutch. Code, 513. The verdict of the jury was in favor of plaintiff in the Circuit Court, and a new trial, upon motion of defendant, refused.

The grounds mainly relied upon by plaintiff in error for a reversal of this judgment are, that the declarations of John W. Mallory, the original payee of the note, were permitted to go to the jury

as evidence, and that the testimony of Walker Brooke, Esq., and others, was improper and not competent.

It will not be controverted, that if the defence set up on the foregoing plea is supported by the evidence, then the case of *Deans* v. *McLendon*, 1 George, 343, settles the controversy; the note is not obligatory, but void.

In support of the affirmative of the issue under this plea, defendant Holman proved that Mallory, from whom he purchased said negro, was engaged in negro trading, and had been for some years previously. That the negro girl Ellen was brought into this State by him (in following his usual avocations) with a "drove" of negroes, and that she was sold to defendant without the certificate or the record of the same, as required by law, and that said negress was *above* the age of fifteen years. This proof made out the case of defendant. The language of the chief justice in the case before referred to, *Deans* v. *McLendon*, at page 359, is, "The sale, then, is the consummation of the prohibited act. It is that which indicates, nay, demonstrates, the illegality of the introduction."

To rebut the conclusion irresistibly arising from this testimony, the plaintiff below introduced a number of witnesses to prove what the declarations of Mallory were at the time he went off to purchase this drove of negroes; and then introduced Mr. Brooke and other members of the bar to prove that the decision in the above-stated case took them by surprise, with a view of showing that said declarations of Mallory were not made with reference to avoiding the effect and consequences of this prohibitory statute. We contend that the court erred in permitting this testimony to go to the jury.

The declarations of Mallory should have been excluded when excepted to by Holman. He was a party to the record, and could not be examined as a witness, nor could he make testimony for himself by making declarations of intention and then proving them. "The declarations of a party to a suit may be introduced against him, but not by him." The interest of the plaintiff Murdock and Mallory in the court below was the same, and the declarations of Murdock would have been equally admissible. The foregoing quotation states the general rule; and it is not controverted that there are exceptions to this rule. The question then arises, is this such a case as falls under the general rule or the exceptions? The

principle applicable to the exceptions is stated by this court in the case of *Lampley* v. *Scott*, 24 Miss. R. 535, to be this, " That the statements and admissions of a party interested may be received in cases of extreme necessity, when, from the nature of the case, no better evidence can be reasonably expected."

The case in court is not a case of " extreme necessity," such as the law contemplates. In the cases referred to in *Lampley* v. *Scott*, they were all cases where no other proof could be adduced. In the case before us, we have the acts of the party outweighing his words, and manifesting his intention to be that which his declarations disavow. They are all cases, too, where public convenience and policy require the rule to be relaxed. This is a case where the public policy requires the strictest enforcement of the general rule. The statute declaratory of the public policy of the State, and the adjudications of the courts to determine and enforce it, will be but waste paper, and the law can be violated with impunity by the slave trader, if his previous declarations of his intentions not to violate the law, shall be allowed as evidence to shield him from the consequences of a violation.

" The law (says Starkie, quoted in the opinion referred to) has been justly jealous of the extension of the rule, and its operation has consequently been very limited in practice." 1 Stark. on Ev. 132.

We think it was error to admit Mallory's declarations.

Was the testimony of the professional gentlemen examined competent to go to the jury ? The only inference that the jury could draw from it was, that John W. Mallory did not know what the laws were in reference to the penalties and forfeitures, &c., of importing slaves into this State as merchandise.

We say that this testimony was improper to go before the jury, because it does not follow, nor is there reasonable grounds for a presumption, that because distinguished members of the bar did not know of the fact that a certain law was in force pertaining to the introduction and sale of slaves, that one engaged in the business of introducing and selling slaves was also ignorant of it. Mallory might have advised with Mr. Houston, who raised the question.

But, again. A man must take notice of the law at his peril. He is not only presumed to know it (a presumption which nothing can rebut), but he cannot prove his ignorance, even by the clearest tes-

timony, much less by inferences, to excuse its violation. If he cannot prove his ignorance to excuse a violation of the law, much less can he prove his ignorance, to strengthen belief in his declarations, that he does not intend to violate it.

This testimony had undue influence with the jury. It had an illegitimate tendency to strengthen Mallory's previous declarations, which were before the jury as evidence in the cause, and without which they might have discredited those declarations.

For these reasons, a reversal of the judgment below is asked and a new trial demanded.

*Somerville* and *Russell*, for Mallory.

The defendant in error instituted suit in the Circuit Court of Carroll against Holman as maker, and Mallory as indorser, of a promissory note.

Holman pleaded specially, setting out that the consideration of the note was a slave, which had been brought into the State as merchandise, contrary to the provisions of the Act of 1822. Hutch. Code, 513, sec. 4.

Mallory pleaded the general issue.

The appellant, Mallory, is interested in having the judgment reversed, only in the event that the judgment against Holman should not be affirmed.

It is insisted, by the counsel for the appellee, that he is entitled to judgment against the indorser, though it should be reversed as to the maker.

1. If the court should regard the defence attempted to be made as sustained by the proof, then the contract is absolutely void, and no action can be maintained on the note to charge either the maker or the indorser.

Where, by positive enactment, or by reason of public policy, a contract is void, it cannot be made the basis of an action whereon to charge any of the parties to the contract. See 3 Kent's Com. 80.

This court has recognized the correctness of this doctrine in cases of contracts tainted with gaming. *Lucas* v. *Waul*, 12 S. & M. 157; *Martin* v. *Terrell*, Ib. 571.

The maker of the note is the primary debtor, and the contract of the indorser is only collateral to his.

A court of justice will not enforce, or give judgment upon, an instrument which is void.

The remedy of Murdock against Mallory would be by action for the consideration given to Mallory; as in case of payment by bills of an insolvent bank, known to purchaser; or bill of exchange forged, known to assignor.

2. The bill of exceptions, which embodies all the testimony introduced before the jury in the court below, does not show that any notice was given to the indorser, Mallory, of non-payment by the maker at maturity.

*J. Z. George*, for defendant in error.

1. The bill of exceptions was taken to the judgment of the court, overruling the defendant, Holman's, motion for a new trial, which, by the express terms of the statute (Hutch. Dig. 885, § 1), can only be made the medium of exceptions to the opinion of the court on the motion; besides, exceptions must be taken to the introduction of evidence at the time it is offered. 1 How. Miss. 126; Ib. 497; Ib. 572.

2. The declarations of Mallory, being a part of the *res gestœ*, were admissible, for the purpose of showing the *intention* with which the act was done. The introduction of the slave without a certificate of character, is lawful or unlawful, as the intention was to sell or not. The subsequent sale tended to show that the intention was illegal; his refusal to sell, when applied to for that purpose, is inconsistent with the idea that he held them as merchandise, and therefore tended to rebut the presumption in favor of a contrary intention arising from the sale. His declarations and conduct, contemporaneous with the introduction and sale appear, therefore, highly important, to show the party's intention. The case is exactly similar, in this respect, to one involving a question of domicile, when the declarations of a party removing, made on the eve of his departure and during his residence at the place to which he has removed, are always admitted to explain whether his removal was intended to be permanent or temporary.

3. If Mallory's declarations were properly admissible, then it would seem that the testimony of the members of the bar cannot be objectionable. Mallory may have made the declarations fraudu-

lently, and for the purpose of furnishing an answer to a charge that the slaves were introduced in violation of law. There could be no motive for this; unless he knew that such introduction was illegal, or unless he is to be considered wiser than the members of the bar and the people in the community in which he lived, the evidence would raise the presumption that he was ignorant of any prohibition to import slaves for sale; and that, therefore, his declarations were made in good faith, and were true.

4. But under any view the judgment must be affirmed as to Mallory. He took no exceptions, and there is not a shadow of a pretence that it is not correct as to him.

SMITH, C. J., delivered the opinion of the court.

This suit was founded upon a bill single, payable to the order of J. W. Mallory, made by D. A. Holman, and by Mallory indorsed to the defendant in error. The defence relied on was, illegality in the consideration of the bill. The answer alleges that it was given for the price of a slave, sold by Mallory to Holman, introduced into this State as merchandise, in violation of the statute. There was a verdict for the plaintiff, and a motion for a new trial, on the ground that illegal evidence was admitted, and that the court refused to charge the jury as requested by the defendant. The motion was overruled, and the case is brought before us upon the bill of exceptions taken to the judgment on the motion.

No bill of exceptions was filed to the admission of the objectionable testimony, and counsel insist that the objections to it, now insisted upon, cannot be noticed.

This position is untenable. It appears, in the bill of exceptions tendered to the decision on the motion, that the defendant objected to the evidence and excepted upon its admission. Under similar circumstances, it is the settled practice of this court, in determining the propriety of the judgment on a motion for a new trial, to refer to, and consider exceptions to the evidence, thus stated to have been taken.

The only point about which there was any contest, was, whether the slave in question was not imported as merchandise, into this State. If introduced for that purpose, it is not pretended that the requisitions of the statute, in regard to the introduction, for traffic,

of slaves into the State, were complied with.   To repel the pre-
sumption arising from the fact of the sale, the plaintiff offered to
prove the acts and declarations of Mallory, the party by whom
said slave was brought to Mississippi, and subsequently sold to the
defendant, Holman.

It appears that Mallory had, for some time, been engaged in the
traffic of slaves, making Black Hawk, in Carroll county, the centre
of his operations.   That in the autumn of 1854, he left Mississippi,
with the intention of buying negroes in Virginia, or elsewhere, and
bringing them into this State; and that, in the spring of 1855, he
returned to Black Hawk, bringing with him a number of slaves,
including the one sold in October following to Holman.

The witnesses introduced to prove the acts and declarations of
Mallory, testified that they " heard Mallory say he had bought
said negroes for his own use; that he expected to be married, and
intended to purchase and settle a farm in Carroll county.   That
they heard him make these declarations before leaving, and just on
the eve of his departure in the fall of 1854, at which time he said
he was going to purchase said negroes."   That he " went to look
at several places with, as he said, a view to purchase, and made
frequent inquiry for land and plantations, saying he desired to pur-
chase."   That during the spring and summer of 1855, applications
were frequently made to him, by persons desirous of purchasing
some of said negroes, and that he uniformly refused to sell, stating
that he had bought them for his own use.

The defendant, Holman, objected to the admission of this testi-
mony; but it was allowed to go to the jury.   And this action of
the court is now assigned for error.

The rules of evidence, founded upon the convenience, interests,
and necessities of society, are adopted for practical purposes in the
administration of justice, and should be applied so as to promote
the ends for which they were designed.   Hence, although as a
general rule the acts or declarations of a party interested in the
result of a suit cannot be given in evidence in his own favor, those
very purposes and ends, required and led to the recognition of cer-
tain exceptions to that rule.

Expediency and public policy, which amount to necessity, are
the ground upon which one of these exceptions is based.   It is laid

down that the statements and admissions of a party interested may be received in cases of extreme necessity, arising from the particular nature of the subject of inquiry, which renders it exceedingly improbable that any better evidence can exist, whether that improbability arise from the confined nature of the transaction, or from the generality of the interest which is equally likely to affect all other witnesses. The law, it is said, is jealous of any extension of the rule, and requires that "the necessity upon which the exception is justified" must result not from the accidental failure of evidence in a particular and isolated case, but it must be general in its nature, embracing a large and definite class of cases, and it must arise in the usual and natural course of human affairs. 1 Stark. Ev. 132.

In the case before us the *quo animo* characterized the act of importation. The violation of the statute was complete, if the purpose of the importer was to sell, so soon as the slaves were brought within the borders of the State. A subsequent sale would be a consummation of the illegal purpose ; and in all such cases would be *prima facie* evidence of such intent. Every citizen may lawfully introduce slaves, for his own use, not convicted of a felony in the place whence imported, without procuring the certificate required by the statute. And it may be said, that from the nature of the transaction, it is highly improbable that a party in the act of importing slaves for his own use could produce any other evidence except his own declarations to prove his intention. And certainly, according to the literal terms of the exception, the declarations of a party thus situated, contemporaneous with the act of importation, would be evidence in his favor. But every one by procuring the certificate, has it in his power to avoid being placed in this dilemma. And as all parties intending a violation of the statute could very easily make evidence for themselves, and thus defeat the policy of the law, such declarations should be admitted with the greatest caution ; and only where there is no ground to suspect their sincerity.

According to this view, the statements of Mallory, made in 1854, that he expected to be married, and that he intended to buy negroes in Virginia and bring them to Mississippi for the purpose of cultivating a plantation which he expected to purchase, should have been ruled out. To hold that these declarations, made months be-

Holman et al. *v.* Murdock.

fore the negroes were purchased or brought into the State, were evidence for the plaintiffs, would, in our opinion, be an extension of the rule not sanctioned by authority, nor warranted by public policy.

But it is said that these declarations were admissible, as parts of the *res gestæ*, under another exception to the rule.

The surrounding circumstances constituting the *res gestæ* may always, in connection with the main fact, be shown to the jury; but the impracticability of laying down any definite rule by which to determine what declarations and circumstances properly constitute the *res gestæ*, is admitted. The question of admissibility is, of course, addressed to the sound discretion of the court, who are to determine it according to the degree of relation which the circumstances bear to the main fact, or the subject of inquiry. The principal points to be considered, says Greenleaf, are whether the declarations and circumstances offered in proof were contemporaneous with the main fact under consideration, and whether they were so connected with it as to illustrate its character. 1 Greenl. Ev. sec. 108. In *Enos* v. *Tuttle*, 3 Conn. Rep. 250, it was said, that to be a part of the *res gestæ*, the declarations "must have been made at the time of the act done, which they are supposed to characterize, and have been well calculated to unfold the nature and quality of the facts they were intended to explain, and so to harmonize with them as obviously to constitute one transaction."

But it is not essential, in order to warrant such evidence, that the act done, with which the declaration is connected, should be a single effort or a positive transaction. It may be continuous for a series of years, and be of a negative or passive character, as the possession of real estate continued for a long period of time, or a residence for years. 3 Phill. Ev. 166, note.

If we apply these principles to the question before us, or consider it with reference to the grounds upon which they are founded, it is impossible to justify the admission of these declarations.

The act of importation was the principal fact, which it is sought to characterize by the declarations. It was a single act, not continuous for a length of time, but confined to a single point. The declarations were not contemporaneous, and there was no such natural connection or dependence between them and the act done,

as to make them necessarily explanatory of its character. Any declaration or circumstance, which would not be evidence, no matter by whom proved, could be received in evidence as part of the *res gestæ.* Let it be conceded that Mallory's declarations were proof of his intention in the autumn of 1854, that when he then left Mississippi it was his intention to buy negroes, carry them back to Carroll county, and settle them upon a plantation which he expected to purchase; would the clear proof of these facts, by competent witnesses, be any evidence that a slave brought by him into the State of Mississippi six months afterwards and sold, was not imported as merchandise? It would not. And if not, there can be no pretence for saying that his declarations were properly admitted.

To render this still more certain, let the position of the parties be changed. Let it be supposed that Mallory was under prosecution for having illegally imported, as merchandise, this very slave, it would certainly not be contended that his declaration, before leaving Mississippi, in 1854, to the effect that he intended to buy negroes, and bring them back for sale, would, on the trial, be evidence of the illegal introduction of the said slave.

Several witnesses (members of the bar) were called by the plaintiff, and interrogated as to the time when they discovered that the Act of 1822, in reference to the importation, as merchandise, and sale of slaves, was in force. In answer to which, they testified that they knew not that said act was in force until the publication of the opinion of this court, in the case of *Deans* v. *McLendon,* 1 George, 343, that it took the profession by surprise, and that it was generally understood in that region of country, among the members of the bar and the people, that it was not illegal to introduce slaves for sale without a certificate of character. The question and the testimony, delivered in response to it, were excepted to; but the exception was overruled, and the testimony was allowed to go to the jury, as tending to prove circumstances from which the jury might infer that the declarations of Mallory, above referred to, were made with sincerity, and not from a premeditated design of evading the law.

It is very clear that this testimony was incompetent.

Proof that a previous statute, which had been in force for eight years, had escaped the attention of the witnesses, and that they,

with the inhabitants of the county, believed that the importation of uncertificated slaves, for merchandise, was not illegal, was certainly not a circumstance, from which the inference could legally be drawn by the jury, that Mallory entertained the same opinion, much less in opposition to the legal presumption, that every man is acquainted with the law, that he was ignorant of a particular statute.

Judgment reversed, and cause remanded for a new trial.

HANDY, J., dissented from the opinion of the court, upon the point of the admissibility of the declarations of Mallory; and was of opinion that such declarations, made in immediate connection with the enterprise of leaving this State, and going to Virginia to purchase slaves, to be brought to this State, was competent evidence, to be submitted to the jury, upon the subject of the intention of the party in the enterprise.

MEMORANDUM.—On motion of defendant in error, this cause was reconsidered by the court, and a decree of reversal only as to Holman entered, and affirmance as to John W. Mallory.